**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

**DEC 2 6 2012**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                          :
SANOFI PASTEUR INC.,                                      :
1 Discovery Drive                                         :
Swiftwater, Pennsylvania 18370                            .

               Movant,

   vs.

AMERICAN ANTITRUST INSTITUTE                              :
2919 Ellicot Street NW                                    :
Washington, DC 20008                                      :
                                                          :
               Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case: 1:12-mc-00674
Assigned To : Leon, Richard J.
Assign. Date : 12/26/2012
Description: Miscellaneous

**SANOFI PASTEUR INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**
**FROM NON-PARTY AMERICAN ANTITRUST INSTITUTE**

Pursuant to Rule 45(c) of the Federal Rules of Civil Procedure, Defendant/Counterclaim

Plaintiff Sanofi Pasteur, Inc. respectfully requests that this Court compel non-party American

Antitrust Institute ("AAI") to produce documents and electronically stored information

responsive to the subpoena issued from this Court and served on AAI on November 8, 2012.[1]

As set out in the accompanying memorandum and supporting certification, AAI has

failed to demonstrate sufficient cause for refusing to produce documents sought by the subpoena.

Compliance with the subpoena does not impose an undue burden, and the requested documents

are relevant to central issues in the underlying case. AAI has refused to produce documents

under the cover of blanket objections, which do not suffice to excuse it from compliance with the

---

[1] Sanofi notes that this case appears to satisfy the definition of a "related case" under LCvR 40.5(a)(2). The case to
which this motion appears related is Case No.: 1.12-MC-00629 (RJL). Sanofi has completed the Court's Related
Case Form.

subpoena.  This Court therefore should grant Sanofi's motion to compel production and order a full response to the subpoena.

Dated:  December 21, 2012                    Respectfully submitted,

                                             Colin R. Kass (D.C. Bar No. 460630)
                                             Rhett R. Krulla (D.C. Bar No. 279505)
                                             Scott M. Abeles (D.C. Bar No. 485501)
                                             PROSKAUER ROSE LLP
                                             1001 Pennsylvania Ave., NW
                                             Washington, D.C. 20004
                                             T: (202) 416-6800
                                             F: (202) 416-6899
                                             ckass@proskauer.com
                                             Attorneys for Sanofi Pasteur, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
SANOFI PASTEUR INC., :
1 Discovery Drive :
Swiftwater, Pennsylvania 18370 :
:
               Movant, :   Underlying Case:
:   2:11-cv-07178 (JLL) (MAH)
    vs. :   D. New Jersey
:
:
AMERICAN ANTITRUST INSTITUTE :
2919 Ellicot Street NW :
Washington, DC 20008 :
:
          Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM IN SUPPORT OF SANOFI PASTEUR'S MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS FROM
## NON-PARTY AMERICAN ANTITRUST INSTITUTE

**TABLE OF CONTENTS**

I.    INTRODUCTION .............................................................................................................1

II.   THE FACTS ...................................................................................................................5

III.  AAI'S RELEVANCE OBJECTIONS ARE FRIVOLOUS...............................................10

IV.   COMPLIANCE WITH THE SUBPOENA IS NOT UNDULY BURDENSOME ...........14

V.    CONCLUSION..............................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

*CASES*

*Adkins v. Sogliuzzo,*
    2011 WL 5040780 (D. N.J. 2011) ......................................................................12

*AMEC Civil, LLC v. DMJM Harris, Inc.,*
    2008 WL 8171059 (D. N.J. 2008) ......................................................................12

*\*Beckner v. Bayer Cropscience, L.P.,*
    2006 WL 6906942 (S.D. W. Va. 2006) ..............................................................13

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).............................................................................................7

*\*Flanagan v. Wyndham Int'l Inc.,*
    231 F.R.D. 98 (D.D.C. 2005)..............................................................................11

*Linder v. Dep't of Def.,*
    133 F.3d 17 (D.C. Cir. 1998)..............................................................................10

*\*N.C. Elec. Membership Corp. v. Carolina Power & Light Co.,*
    666 F.2d 50 (4th Cir. 1981) ................................................................................12

*N.C. Right to Life, Inc. v. Leake,*
    231 F.R.D. 49 (D.D.C. 2005)..............................................................................11

*\*Nat. Resources Defense Council v. Curtis,*
    189 F.R.D. 4 (D.D.C. 1999)................................................................................14

*\*Northrop Corp. v. McDonnell Douglas Corp.,*
    751 F.2d 395 (D.C. Cir. 1984)......................................................................11, 15

*NXIVM Corp. v. Sutton,*
    2010 WL 2521352 (D. N.J. 2010) ......................................................................12

*Peskoff v. Faber,*
    2006 WL 1933483 (D.D.C. 2006) ......................................................................14

*Sanford v. Stewart,*
    2012 WL 5271692 (N.D. Ohio 2012)...................................................................5

*United Mine Workers v. Pennington,*
    381 U.S. 657 (1965)...........................................................................................12

*United States v. Abel,*
    469 U.S. 45 (1984).............................................................................................12

*Westinghouse Elec. Corp. v. City of Burlington, Vt.,*
  351 F.2d 762 (D.C. Cir. 1965) ............................................................................................14

*Yousuf v. Samantar,*
  451 F.3d 248 (D.C. Cir. 2006) ............................................................................................5

**OTHER AUTHORITIES**

2 Areeda & Hovenkamp, Antitrust Law (2d ed. 2000) ....................................................6

Fed.R.Civ.P. 26(b)(1) ........................................................................................................11

Fed. R. Civ. P. 45 ....................................................................................................5, 11, 16

U.S. const. amend. I ............................................................................................................5

*Authorities on which Sanofi chiefly relies.

## I.   INTRODUCTION

As part of its effort to uncover the truth of essential claims in the underlying antitrust suit against it, Sanofi Pasteur recently served a *subpoena duces tecum* on the American Antitrust Institute ("AAI").   In response, AAI claims that the requested discovery has "no possible relevance" to Sanofi's claims or defenses in the case. That is simply not true.[1]

In related motion practice involving a virtually identical subpoena issued to another lobbying organization, Citizens for Responsibility and Ethics in Washington ("CREW"), Sanofi explained the relevance of the information sought; and thus, the Court may already be familiar with the facts. *See* Case No.: 1:12-MC-00629 (RJL).

These facts show that AAI is a *material actor* in a scheme hatched between Sanofi's competitor (Novartis) and the plaintiffs' counsel who orchestrated a massive class action lawsuit against Sanofi in the Federal District of New Jersey.   While many of the scheme's details remain hidden behind a wall of discovery objections, the *existence* of this scheme – detailed below – has been clearly revealed through a careful review of the public record, discussions with the parties, and the limited discovery provided to-date.   Most importantly, neither plaintiffs' counsel, Novartis, AAI, nor any of the scheme's other participants deny any of the *operative facts* of this scheme, or their role in it.

The scheme – which goes to the heart of the case – is ingenious in its simplicity.   In early 2010, Novartis introduced a meningitis vaccine in competition with Sanofi's incumbent vaccine,

---

[1] All citations in this brief to Exhibits are to the following, which are attached to the Declaration of Scott M. Abeles: Ex. 1 (Nov. 2nd Joint Discovery Letter); Ex. 2 (Oct. 17th Ltr. to plaintiffs counsel), Ex. 3 (Nov. 7th email from plaintiffs' counsel); Ex. 4 (Nov. 26th Ltr. to Crew); Ex. 5 (Nov. 27th response Ltr. from CREW); Ex. 6 (Nov. 27th AAI objections); Ex. 7 (email reflecting coordination between plaintiffs' counsel and CREW); Ex. 8 (cover page of Novartis sponsored expert report); Ex. 9 (July 6, 2010 CREW Letter to FTC); Ex. 10 (March 19, 2012 CREW Letter to FTC); Ex. 11 (Nov. 22, 2011 AAI Letter to FTC); Ex. 12 (Initial Complaint); Ex. 13 (July 18, 2012 Discovery Order); Ex. 14 (Discovery Confidentiality Order); Ex. 15 (CREW's Motion to Quash); Ex. 16 (Sanofi's Opposition to CREW's Motion to Quash); Ex. 17 (November 8, 2012 subpoena to AAI).

Unless otherwise noted, all emphasis added and all citations and internal quotation marks omitted.

and quickly captured *twenty percent* of the market. Despite this success, Novartis began exploring whether to invoke the antitrust laws to challenge Sanofi's discounting practices and thereby insulate itself from competition. As a successful entrant, however, Novartis lacked both *standing* and *credibility* to raise antitrust concerns itself. So Novartis did not file its own suit. And it did not complain to the FTC. Instead, Novartis sought out more sympathetic voices to be the standard bearer for its cause.

Enter plaintiffs' counsel, two non-profit organizations over whom they exercise significant influence or control (AAI and CREW), an economist consulting firm (Navigant) jointly retained by Novartis and plaintiffs' counsel, and a loyal Novartis customer (Dr. Adriana M. Castro) who agreed to serve as a named plaintiff in the underlying action. Who first approached whom and precisely when remains hidden from view. But we do know that Novartis and plaintiffs' counsel used AAI, CREW, and Dr. Castro as their "stalking horses" – to use plaintiffs' term – to mount a full scale, multi-pronged antitrust attack against Sanofi, which included a well-orchestrated publicity campaign, letters to the FTC, and the filing of a class action suit. This is not speculation. We *already* know that:

- According to Novartis's counsel's own admission, Novartis embarked on a *behind-the-scenes* strategy to mount an antitrust attack on Sanofi;

- Novartis and plaintiffs' counsel retained the same economists (Dr. Hal Singer and Navigant Consulting) to evaluate and assert antitrust concerns about Sanofi's discounting; and that plaintiffs' counsel has lengthy and deep ties with Singer;

- As plaintiffs' counsel admits, they are closely connected to AAI and CREW. At least six plaintiffs' attorneys of record in this case sit on AAI's advisory board, and two of the attorneys who filed the initial complaint are part of AAI's self-described "***inner circle.***" Similarly, one of CREW's founders is a managing partner of a firm appointed as lead counsel in this case (Berger & Montague);

- A member of AAI's advisory board and plaintiffs' counsel, David Balto (and his associate) coordinated with CREW concerning CREW's publicity and letter writing campaign. Notably, CREW, a group devoted to exposing political corruption, began its campaign within a few short months after Novartis' entry in

2

the vaccine market, and has been privately coordinating with plaintiffs' counsel with respect to the FTC, CREW's publicity efforts, and this lawsuit ever since;

- AAI and plaintiffs' counsel were preparing their filings at *exactly* the same time, using information *Novartis* sponsored through their jointly retained expert; and

- The first named plaintiff – Dr. Castro – is a ***loyal Novartis customer*** (who did not even purchase Sanofi's meningitis vaccine during the relevant period), and was presumably identified with the help of Novartis.

While much of the scheme has slowly started coming to light, much still remains hidden. In part, this is because AAI, plaintiffs' counsel, and CREW have relied on discovery objections to erect a collective wall of secrecy, while at the same time deflecting discovery by resorting to name calling, characterizing Sanofi's "*theory*" – not the facts it presents – as "baseless," "ridiculous," "scurrilous," or "nonsense." *See* Exs. 1, 3, 15.

But if that were the case, why don't they deny the operative facts? What fact – drawn from the public record – did Sanofi get wrong? And why not answer Sanofi's direct questions? As AAI acknowledges, Sanofi provided a detailed "explanation ... regarding Sanofi's objectives with respect to the Subpoena," including relaying in detail the scheme as Sanofi understood it. Rather than deny AAI's role in the scheme, AAI simply sent a two page letter "object[ing] to the subpoena in its entirety" on burden and relevance grounds. Ex. 6. Similarly, Sanofi's efforts to obtain information from plaintiffs' counsel has been meet with nothing but silence and objections. For example, Sanofi asked plaintiffs' counsel if they coordinated with CREW, AAI, or Novartis prior to the filing the initial Complaint. No response. Sanofi asked whether Novartis helped to identify or solicit any named plaintiff or other potential fact witness. Again, plaintiffs' counsel demurred. *See* Exs. 2, 3.[2]

---

[2] As Sanofi noted in the CREW opposition brief, CREW, like plaintiffs' counsel, carefully avoided denying any of the operative facts Sanofi has set forth regarding the scheme *See* Ex. 16, Sanofi Op. Br. at 25.

Sanofi cannot let this issue lie.  If this scheme is successful, Novartis stands to gain millions in profits by hamstringing Sanofi's efforts to discount its products in competition with Novartis.  And plaintiffs' counsel stand to gain millions in *attorneys' fees* if they can persuade a jury that Novartis has been foreclosed from the market, and that customers (including the Novartis-loyal one hand-picked to serve as the primary named plaintiff) have been injured.

The facts Sanofi seeks from AAI will put an end to this scheme, as the facts sought go to the heart of the case:  Novartis's alleged foreclosure, and Dr. Castro's alleged injury.   The credibility of these witnesses – Novartis and Dr. Castro both – on these issues is paramount.  Dr. Castro alleges that she paid more for Sanofi's meningitis vaccine, that "she was tired of being taken advantage of" by Sanofi, and that Sanofi's discounting practices "improperly interfere with the physician-patient relationship by forcing doctors to buy vaccines" that they would otherwise have purchased from Novartis.  Cmplt. ¶ 140, 11-cv-07178, Dkt. No. 28; Ex. 1, at 39.  This is a serious allegation.  But it is not true.  The evidence we are seeking through this subpoena will unequivocally demonstrate that this suit was motivated – not by desire for redress for a *valid* claim of ***customer*** injury – but for Novartis's and plaintiffs' ***counsel's***  own financial gain.  Accordingly, the relevance of the information sought cannot seriously be disputed.

Nor is there any merit to AAI's burden argument, which is premised on the supposed irrelevance of AAI's role in the scheme.  Sanofi narrowly crafted its subpoena to uncover the facts relating to *this* scheme.  It would be surprising if AAI needed to devote more than a few hours complying with the subpoena, or if it had more than a box or two of responsive documents.  And if burden were a *true* concern, AAI could have tried to negotiate the subpoena's scope, rather than try to evade it entirely.  But it did not.  AAI did not attempt to confer about limits on

the scope of the requests. It did not attempt to seek reimbursement of its costs of compliance. And it did not provide any facts to support its burden argument.

Because burden and relevance are the only two grounds on which AAI objected – and because both of these grounds lack merit – Sanofi respectfully requests that this Court order AAI to comply with the subpoena with 14 days of this Court's ruling.[3]

## II.    THE FACTS

For more than thirty-five years, the Sanofi name has been the gold standard in the prevention of meningitis disease. Sanofi introduced Menomune® vaccine in 1978, and Menactra® vaccine in 2005, and until 2010 was the only FDA-licensed manufacturer of meningococcal vaccine in the United States ("meningococcal" is the virus strain that causes meningitis).[4]

In early 2010, Novartis introduced a competitive vaccine, Menveo®. Menveo was an instant success, with its market share quickly rising to *twenty percent*. Not content to chisel away at Sanofi's market share through price competition, Novartis quickly recognized that it could do better by invoking the antitrust laws to limit Sanofi's ability to engage in price discounting. But Novartis could not make a credible argument of foreclosure, given its successful launch and quick rise in market share. Thus, Novartis devised a plan of using others to assert an antitrust attack. This is not speculation. During the meet and confer process with

---

[3] Sanofi notes that AAI has not asserted that the First Amendment immunizes it from discovery. Thus, the objection is waived. *See Sanford v. Stewart*, 2012 WL 5271692, *3 (N.D. Ohio 2012) (objections raised after the initial set of objections are waived as untimely, noting "Rule 45 require[s] the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a game.") (quoting *In re DG Acquisition Corp*, 151 F.3d 75, 81 (2d Cir. 1998)), *accord Yousuf v Samantar*, 451 F.3d 248, 252 (D.C. Cir. 2006). In any event, the First Amendment does not immunize AAI from discovery in this case, for the reasons Sanofi has explained in its opposition to CREW's motion to quash the CREW Subpoena. Ex. 16.

[4] Sanofi includes only those facts required to decide this motion. Sanofi also accepts as true, for purposes of this motion, plaintiffs' allegation that "meningococcal vaccines" constitutes a relevant antitrust market, since that allegation has no bearing on this motion. For the record, however, Sanofi denies that "meningococcal vaccines" constitute a well-defined relevant antitrust market. Additional facts regarding the underlying litigation may be gleaned from Sanofi's Answer and Counterclaim, Dkt. No. 111, 11-cv-07178. Other facts regarding AAI's participation in the scheme, and the scheme itself, are set forth in the Joint Discovery Letter. *See* Ex. 1, at 29-37.

Novartis, Novartis's outside counsel verbally admitted that Novartis had been involved in behind-the-scenes efforts to persuade the FTC to challenge Sanofi's discounting.[5]

As part of these behind-the-scenes efforts, Novartis retained an economics firm, Navigant Consulting, to write a report disparaging Sanofi. The lead authors of that report were Hal Singer and Kevin Caves, and the report expressly notes that it was prepared with funding and support from Novartis. Ex. 8. Indeed, it was this report that first put Sanofi on notice of the scheme, causing it to investigate further. Dr. Singer is an economist that *plaintiffs' counsel in this case frequently use* in antitrust cases of this type. *See* Ex. 1, at 31 n.24 (listing cases).

The Singer and Caves report was also cited by AAI in its letter to the FTC. *See* Ex. 11. AAI's board is dominated by the plaintiffs' attorneys of record in this case. For example, lead class counsel **Eric Cramer** (also from Berger & Montague) is a senior fellow with AAI and a member of its advisory board, and lead class counsel, **Linda Nussbaum**, is also on AAI's advisory board. Other class counsel (all from different firms) are also on AAI's advisory board, including **Joshua Davis**, **David Balto**, **Anthony Bolognese**, and **Steve Shadowen**. In fact, counsel of record for at least five of the six law firms (excluding local counsel) that signed on to the *initial* complaint against Sanofi have *direct connections* to CREW or AAI. *See* Ex. 12.

Based on these facts, Sanofi asked plaintiffs whether they had engaged in any pre-Complaint communications with Dr. Singer. It was then that plaintiffs admitted that, in addition to Novartis' retention of Dr. Singer, they too had retained him in this case (and thus, sought to shroud their communications with this jointly retained expert in privilege).[6]

---

[5] It is well-settled that the antitrust laws were not designed to protect competitors from competition. Thus, when a successful firm complains about its rivals, such complaints are typically shrugged off by courts and regulators as, at best, "sour grapes" or, at worst, attempts to use antitrust law to *impede* competition. *See* 2 Areeda & Hovenkamp, *Antitrust Law*, ¶ 348a, at 387 (2d. ed.2000) (courts should be "properly skeptical of many rivals' suits.").

[6] The discoverability of plaintiffs' counsel's communications with Navigant is pending before the New Jersey court.

In addition to hiring expert economists, Novartis also began coordinating with CREW, another lobbying organization. We do not yet have a record of when such coordination began. But CREW embarked on its publicity campaign and issued its first letter to the FTC by July 6, 2010, a mere five months after Novartis entered the market. Prior to this time, there had been no public complaints (of which Sanofi is aware) concerning Sanofi's contracting practices, especially since its discounting practices are industry standard practiced by all major vaccine manufacturers. Somehow, CREW learned of these practices and concluded they were anticompetitive.[7]

With due respect to CREW, it is unlikely that this letter could have been written without input from Novartis, plaintiffs' counsel, or both. The Singer report was not yet public when CREW filed its first letter. Yet it features the same misinformation about Sanofi's practices that characterized the sponsored expert report and plaintiffs' subsequent pleadings in this case. Aside from their errors, moreover, CREW's letters exhibit a familiarity with the arcane topic of vaccine bundled pricing that the average organization, even a policy-oriented one, lacks.[8]

This itself is surprising. But what is more surprising is that CREW's stated mission – and prior activities – relate to *governmental* corruption.[9] So why did CREW suddenly divert its

---

[7] Sanofi believes that, in addition to trying to spark an FTC investigation that, if successful, would help pave the way for a private lawsuit, the *publicity* campaign embarked upon by CREW and AAI, and the decision to publicize the Navigant report was designed, at least in part, to put facts in the public record that *plaintiffs' counsel* could use to create a basis for the suit that would survive a challenge under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

[8] CREW's letter also makes material misstatements. For example, CREW represented that "a large number of physicians are barred from purchasing Menveo." Ex. 9. This statement was, and is, flatly untrue.

[9] Following the model established in this case, in June 2012, CREW engaged in a similar departure from its mission by asking the Department of Justice to investigate two energy companies for antitrust violations. This appears, again, likely designed to create a plausible basis for a future price fixing case, under *Twombly*, since the request for an investigation has nothing to do with its core mission of eradicating government corruption. Notably, Berger & Montague is routinely involved in such follow-on private antitrust litigation and had previously targeted Chesapeake Energy (one of the two entities that was the subject of the June 2012 CREW letter) in prior class action litigation. *See Timothy Poh v. Chesapeake Energy Corporation*, Case No.5:11-cv-0985-M (W.D. Ok.). This suggests that CREW continues to be used as a stalking horse for plaintiffs' counsel.

7

resources to an issue outside its stated mission of promoting ethical government and politics? The answer is clear. Just as with AAI, there are strong ties between plaintiffs' counsel in this case, and CREW. As mentioned above, Daniel Berger was not only a founder of CREW, but is also a managing partner of Berger & Montague, one of the firms that have been appointed as lead counsel in this case. In addition, plaintiffs have confirmed that there are other "[p]laintiffs' counsel (or lawyers in their firms ...) [that] have preexisting relationship with ... the American Antitrust Institute and with [CREW]." Ex. 1, at 39.[10]

Given these suspicious circumstances, Sanofi continued to investigate. Sanofi explained the scheme in detail to AAI's outside counsel. *See* Ex. 6, at 1 (noting that Sanofi provided an explanation of its objectives with the subpoena). But AAI decided to object, rather than explain its understanding of the facts. *Id.* Similarly, Sanofi asked CREW a simple question: Who brought this issue to CREW's attention? CREW refused to answer. *See* Ex. 4. Sanofi also asked plaintiffs' counsel: "When did you first discuss [these issues] with CREW?" "Were you involved in the decision by CREW to prepare a letter to the FTC?" "To your knowledge, was Novartis involved?" "Which individuals from plaintiffs' counsel or their firms have had contacts with Novartis, CREW, AAI, or Navigant concerning" these issues? *See* Exs. 2, 3. All these questions went unanswered, which is telling, as accused conspirators would normally be expected to offer denials and point out any factual inconsistencies.

Even more telling, though, is that after plaintiffs filed the complaint, CREW and plaintiffs' counsel (including attorneys who are members of AAI's self-described "***inner circle***" and advisory board) continued to coordinate. On March 5, 2012, for example, a few days after

---

[10] Plaintiffs' counsel (and CREW, relying on plaintiffs' counsel's representation) deny that Mr. Berger was involved in CREW's decision to engage in a publicity and letter-writing campaign. CREW Br. 11. But each has remained silent as to any other CREW affiliation with plaintiffs' counsel (or their firms). Notably, plaintiffs' counsel refused to reveal the identities of the individuals connected to both plaintiffs' counsel and CREW. *See* Exs. 2, 3.

Sanofi filed a counterclaim against plaintiffs, plaintiffs' counsel reached out to CREW. Ex. 7. We do not know what was discussed, because CREW and AAI-affiliated plaintiffs' counsel were careful to conduct the substance of their conversation by phone. But two weeks later, on March 19, 2012, CREW sent a second letter to the FTC. *See* Ex. 11. As part of this process, CREW then asked AAI-affiliated plaintiffs counsel to help identify a physician that CREW could present to a reporter to whom CREW promised an "*exclusive*" for purposes of publicly disparaging Sanofi. Ex. 7. Thus, any assertion that AAI-affiliated plaintiffs' counsel and CREW have not been coordinating – and that the ties between CREW and AAI-affiliated plaintiffs counsel are just pure coincidences – is undermined by the evidence plaintiffs have already produced.[11]

The effort to get CREW to mount a publicity and letter writing campaign against Sanofi was only the first step in the broader scheme because those efforts were largely unsuccessful. The next step was to recruit AAI to help advance these efforts, since AAI at least has *some* connection to antitrust and competition policy and, thus its complaints were more likely to be taken seriously. But there was a problem. AAI had nothing of substance to add. So someone – we don't yet know who – instructed Navigant to take the unusual step of placing a privately funded report on the public record. This provided AAI the opportunity to funnel the Novartis-sponsored "facts" and "analysis" to the FTC, which they did in a November 22, 2011 letter.

At the *same time* that AAI was preparing its letter to the FTC (presumably working under the direction of AAI-affiliated plaintiffs' counsel), plaintiffs' counsel was actively preparing

---

[11] Plaintiffs have turned over a handful of documents of post-complaint communications with CREW. Sanofi strongly suspects, however, that this production in incomplete. For example, Sanofi suspects that plaintiffs are playing the "two-hats" game, producing some documents drafted in the role as counsel, but refusing to produce documents that relate to their roles as officers or board members of the relevant non-profit groups, like CREW. *See* Joint Letter, Ex. 1. Mr. Berger's files, to Sanofi's knowledge, have not been searched. Nor, to Sanofi's knowledge, have the files of other attorneys who double as CREW associates. Notably, Sanofi asked plaintiffs whether they were engaged in such tactics. *See* Ex. 1, at 32 n. 28; Ex. 2, at 5-6. And again, plaintiffs refused to respond. Ex. 3.

their class action complaint, which they filed *two weeks* later on December 9, 2011. In finalizing this suit, however, plaintiffs counsel faced another problem. They needed to identify someone to serve as a named plaintiff: a sympathetic voice who could claim injury.

But plaintiffs' counsel came up short, until, presumably, Novartis came to the rescue. The person plaintiffs' counsel chose to be their standard bearer was Dr. Castro, a financially troubled physician loyal to Novartis. Though Dr. Castro had ceased buying Sanofi's product prior to the start of the alleged class period (and thus was not herself injured), she was the best they could find at the time, and sufficient to kick-off the case. But how did plaintiffs' counsel find her? She has a small physician practice in Florida. And none of the *initial* plaintiffs' counsel hail from there. *See* Ex. 12 (initial Complaint). So, Sanofi asked plaintiffs' counsel a logical question: Did Novartis help plaintiffs' counsel find Dr. Castro or otherwise help launch this suit? Plaintiffs refused to respond. Exs. 2, 3.[12]

Faced with an inability to obtain any answers to these crucial questions, Sanofi issued subpoenas to CREW and AAI. On November 27, 2012, AAI objected to the subpoena in its entirety, making generalized claims of undue burden and lack of relevance. Ex. 6. Sanofi conferred with counsel for AAI by phone on December 11, 2012, but AAI stuck to its objections. This motion to compel followed.

## III.   AAI'S RELEVANCE OBJECTIONS ARE FRIVOLOUS

The party seeking relief from subpoena compliance bears the burden of demonstrating that a subpoena should be modified or quashed. *See Linder v. Dep't of Def.*, 133 F.3d 17, 24 (D.C. Cir. 1998). This is a "*heavy burden*," particularly where the recipient of a subpoena is

---

[12] The evidence obtained to-date strongly suggests that (i) Novartis and two Novartis-affiliated buying groups had discussions with one or more *lawyers* concerning this case in the fall of 2011, shortly *before* filing the initial Complaint; (ii) Dr. Castro is affiliated with one of these buying groups; and (iii) at least one of these buying groups coordinated with CREW and/or plaintiffs' counsel in this time frame. Thus, it appears that Novartis working through its affiliated buying groups helped to identify Dr. Castro for plaintiffs' counsel to use as their stalking horse.

seeking to avoid compliance all together versus "some more limited protection." *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 404 (D.C. Cir. 1984). This is because the "quashing of a subpoena is an extraordinary measure," and "goes against courts' general preference for a broad scope of discovery." *See Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005); *N.C. Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005).

AAI's burden is made heavier because its primary objection to the subpoena is lack of relevance. The Federal Rules apply a liberal standard authorizing discovery of information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1); Advisory Committee Note on 1946 Amendments to Fed. R. Civ. P. 45 (Rule 26's standard applies to Rule 45). In addition, this Court has made clear that, where, as here, the underlying action is pending in a different district, it must be "cautious in determining relevance of evidence, and in case of doubt should err on the side of permissive discovery." *Flanagan*, 231 F.R.D. at 103.

Applying these standards, AAI's relevance objection should be rejected. Its argument requires turning a blind eye to the scheme between plaintiffs' counsel (including AAI-affiliated plaintiffs' counsel), Novartis, CREW, Navigant, and others. Were it true that AAI was unconnected to the scheme's other participants, and AAI just happened to stumble onto this issue, perhaps its arguments would have merit. But that is not the case. AAI does not deny the existence of the scheme. It does not deny it has evidence of the scheme. It does not deny the scheme is relevant. And it does not deny such evidence is admissible or reasonably calculated to lead to the discovery of admissible evidence.

Because the scheme Sanofi has outlined is plausible, and because neither plaintiffs' counsel nor AAI have denied any operative fact concerning it, the existence of such evidence

should be assumed for purposes of this motion.  The question, therefore, is solely whether evidence of this scheme, if provable, would be *admissible* at trial.

There is no question that it is. It is well-settled that evidence concerning lobbying activities is relevant, admissible, and discoverable if "it tends reasonably to show the purpose and character" of the events under scrutiny. *United Mine Workers v. Pennington*, 381 U.S. 657, 670 n.3 (1965) ("It would of course still be within the province of the trial judge to admit this evidence ... if it tends reasonably to show the purpose and character of the particular transactions under scrutiny."); *N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 666 F.2d 50, 53 (4th Cir. 1981) (*Noerr-Pennington* petitioning immunity "is by definition an exemption from antitrust liability, and not a bar to discovery of evidence."). Similarly, evidence relating to the credibility of the case, and witnesses, is self-evidently relevant and discoverable. *See United States v. Abel*, 469 U.S. 45, 49-52 (1984) (permitting bias impeachment); *AMEC Civil, LLC v. DMJM Harris, Inc.*, 2008 WL 8171059, at *2 (D. N.J. 2008) ("Impeachment evidence is a 'classic example of the type of evidence that should be discoverable'"); *Adkins v. Sogliuzzo*, 2011 WL 5040780,  at *2-3 (D. N.J. 2011) (evidence of witness credibility relevant); *NXIVM Corp. v. Sutton*, 2010 WL 2521352, at *4 (D. N.J. 2010) (impeachment evidence discoverable).

Those issues are critical to the underlying litigation.  Sanofi believes that the jury in the underlying action has a right to know that this case was orchestrated by Novartis and a group of ***twenty-six lawyers from fourteen law firms*** to inflict competitive injury on Sanofi (for Novartis' benefit) and to extract attorneys' fees from Sanofi (for plaintiffs' counsel's benefit). These facts are compelling and will speak for themselves, if only Sanofi is permitted to discover them and reduce them to admissible evidence.

Indeed, this is precisely the type of evidence courts have found discoverable and admissible. For example, in *Beckner v. Bayer Cropscience, L.P.*, 2006 WL 6906942 (S.D. W. Va. 2006), the plaintiff issued a subpoena on third-party West Virginia University Foundation seeking information regarding donations the Foundation made to one defendant after the plaintiff learned that a key case witness made donations to the defendant through the Foundation. *See id.* at *1. The court recognized that "the importance of credibility of witnesses to the trial of cases cannot be overstated," and held that the discovery of potential evidence of bias from the third party was relevant to the case. *Id.* at *4. The "burdensomeness of" the request for donor information was "lessened by Plaintiff's agreement to narrow its scope to only those contributions directed to the School of Medicine, including Dr. Martin's department." *Id.* at *5.

Likewise, Sanofi's narrow subpoena seeks information from AAI that goes to the heart of the lawsuit, including the veracity and the bias of the two ***most important fact witnesses*** that plaintiffs' counsel are likely to call at trial. There is no case unless Novartis can credibly claim foreclosure; and there is no case unless Dr. Castro can credibly claim injury. But a jury listening to cries of foreclosure and the alleged interference with the physician-patient relationship should know that the suit itself is a sham, designed to inflict competitive injury on Sanofi and line the pockets of the fourteen law firms who have signed on to this suit. The evidence in AAI's possession, and its role in this scheme, is thus highly relevant. *Int'l Union*, 590 F.2d at 1147; *Beckner*, 2006 WL 6906942, at *4 (the importance of bias evidence "cannot be overstated.").

Nor is the information Sanofi seeks available elsewhere. AAI is itself a knowing participant in the scheme. It is not an after-the-fact investigator. And Sanofi is not seeking to free ride on AAI investigatory efforts, if any. Sanofi is seeking information about AAI's role in the scheme. Other participants in the scheme may know some of what AAI knows, and some

may not.  But there is no rule that allows one conspirator to evade discovery on the ground that evidence of the conspiracy is available from the other conspirators.  There are many reasons why one participant may have knowledge that the other participants don't.  One participant may take notes of telephone conversations, while another may not.  One participant may engage in acts in furtherance of the scheme that others are not involved in or have not documented.  There may also be bilateral conversations that do not involve all of the scheme's participants.  And there are practical reasons as well.  For example, one participant may have document retention issues that another does not, or one may engage in a more thorough search for relevant information than another.  Put simply, Sanofi is entitled to uncover the scheme from the scheme's participants.

If it were not so permitted, injustice would result.  Sanofi may be wrongly condemned for doing exactly what the antitrust laws want it to do:  lower its price to the thousands of other physicians who – unlike Dr. Castro – *do* want to purchase Sanofi's vaccines at a discount.  Such a result would run counter to the Court's "paramount interest … in having justice done between litigants in Federal courts."  *Westinghouse Elec. Corp. v. City of Burlington, Vt.*, 351 F.2d 762, 767 (D.C. Cir. 1965).

## IV.   COMPLIANCE WITH THE SUBPOENA IS NOT UNDULY BURDENSOME.

AAI also objects on the grounds that compliance with the subpoena would be unduly burdensome.  There is no merit to this claim.  To show undue burden, courts generally require a "specific showing, supported by declaration, as to why the production sought would be unreasonably burdensome."  *Peskoff v. Faber*, 2006 WL 1933483, *2 (D.D.C. 2006) (finding non-party movant's general objections and claims of intent to harass did not suffice to show undue burden); *Nat. Resources Defense Council v. Curtis*, 189 F.R.D. 4, 13 (D.D.C. 1999) (requiring a "specific, detailed showing, usually by affidavit, of why weighing the need for

14

discovery against the burden it will impose permits the conclusion that the court should not permit it.").

AAI cannot make this required showing. Through carefully constructed definitions and requests, the subpoena is limited to a specific scheme, the specific actors in that scheme, and the specific topics concerning that scheme. The scheme itself was hatched only about two years ago, and involved a very small portion of AAI's activities over that time. Six of the requests seek information back to 2005, but such requests are limited to communications with plaintiffs' counsel and Novartis concerning their ties, and the existence of similar schemes. Such limited requests are hardly burdensome. It would be surprising if AAI needed to devote more than a few hours complying with the subpoena, or if it had more than a box or two of responsive documents. And if burden were a *true* concern, AAI could have tried to negotiate the scope of the subpoena with Sanofi, rather than simply seek to evade it in its entirety.

Moreover, as the D.C. Circuit explained, "the inconvenience of" a "discovery request" "is not reason enough, alone" to avoid a subpoena. *Northrop Corp.*, 751 F.2d at 407. Rather, a "reasonable inconvenience must be borne to further the goals of discovery – the making available to litigants all relevant and available information." *Id.* That was so even though "the volume of documents [the government] claim[ed] it must search is extraordinary," because "volume alone is not determinative." *Id.* at 404.

In addition, AAI is a sophisticated organization made up of an impressive roster of savvy Washington D.C. veterans. It generates working papers, white papers, commentaries, published articles, and amicus briefs on over a dozen industries and issues.[13] It is capable of complying with the subpoena. And even if AAI does not have the resources to comply, the remedy is not to

---

[13] AAI, Industries & Issues, http://www.antitrustinstitute.org/~antitrust/content/industries-issues.

absolve it of compliance, but to require reimbursement for reasonable expenses.  *See* Fed. R. Civ. P. 45(c)(3)(C)(ii).

## V.   CONCLUSION

For the foregoing , Sanofi requests this Court to direct AAI to comply with the subpoena as written within 14 days.

Dated:  December 21, 2012

Respectfully submitted,

Colin R. Kass (D.C. Bar No. 460630)
Rhett R. Krulla (D.C. Bar No. 279505)
Scott M. Abeles (D.C. Bar No. 485501)
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004
T: (202) 416-6800
F: (202) 416-6899
ckass@proskauer.com
*Attorneys for Sanofi Pasteur, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2012, I caused to be served, by electronic mail and first class mail, postage prepaid:  1) Motion of Sanofi Pasteur to Compel Non-party American Antitrust Institute ("AAI") to produce documents and electronically stored information responsive to the subpoena served on AAI on November 8, 2012; 2) Sanofi's Memorandum In Support;; 3) Proposed Order; and 4) Declaration of Scott M. Abeles, with accompanying exhibits, in Support of Sanofi's Memorandum in Opposition to CREW's Motion to Quash, on:

> Jeffrey I. Shinder
> 335 Madison Ave. 9th Floor
> New York, NY. 10017
> United States of America
> JShinder@constantinecannon.com

and by first class mail, postage prepaid, to:

> Peter Pearlman
> Cohn Lifland Pearlman Herrmann & Knopf LLP
> Park 80 West - Plaza One
> 250 Pehle Avenue, Suite 401
> Saddle Brook, NJ 07663

Dated: December 21, 2012

Scott M. Abeles (D.C. Bar No. 485501)
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004
T: (202) 416-6800
F: (202) 416-6899
sabeles@proskauer.com
*Attorney for Sanofi Pasteur, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |
|---|---|
| SANOFI PASTEUR INC.,<br>1 Discovery Drive<br>Swiftwater, Pennsylvania 18370 | : <br> : <br> : <br> : |
| Movant, | :<br>: <u>Underlying Case:</u><br>: 2:11-cv-07178 (JLL) (MAH) |
| vs. | : D. New Jersey<br>: |
| AMERICAN ANTITRUST INSTITUTE<br>2919 Ellicot Street NW<br>Washington, DC 20008 | :<br>:<br>:<br>:<br>: |
| Respondent. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF SCOTT M. ABELES IN SUPPORT OF**
**SANOFI PASTEUR'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**
**FROM NON-PARTY AMERICAN ANTITRUST INSTITUTE**

I, Scott M. Abeles, declare as follows:

1.      I am an attorney at Proskauer Rose LLP, and an attorney for Sanofi Pasteur, Inc., Defendant in the underlying case. I submit this declaration to place before the Court documents in support of Sanofi's Motion to Compel Production of Documents from the American Antitrust Institute ("AAI").

2.      Attached as Exhibit 1 is a true and correct copy of the Joint Discovery Letter, 11-cv-0178, Dkt. No. 124, Nov. 2, 2012.

3.      Attached as Exhibit 2 is a true and correct copy of a letter from Colin Kass to Daniel Walker dated October 17, 2012.

4.      Attached as Exhibit 3 is a true and correct copy of an e-mail from Daniel Walker to Jessica Sonenshein, Eric Cramer, Linda Nussbaum, Peter Pearlman, Pete Barile, Colin Kass, and Rhett Krulla, dated Nov. 7, 2012.

5.      Attached as Exhibit 4 is a true and correct copy of a letter from Colin Kass to Anne L. Weismann, Esq. dated November 26, 2012.

6.      Attached as Exhibit 5 is a true and correct copy of a letter from Anne L. Weismann to Colin Kass, dated November 27, 2012.

7.      Attached as Exhibit 6 is a true and correct copy of a letter from Jeffrey Shinder to Colin Kass, dated November 27, 2012.

8.      Attached as Exhibit 7 is a true and correct copy of an e-mail from Brendan Coffman to Anne Weismann and David Balto, dated March 5, 2012, and Bates-stamped PCF0000240-241.

9.      Attached as Exhibit 8 is a true and correct copy of relevant portions of Kevin W. Caves & Hal J. Singer, *Bundles in the Pharmaceutical Industry: A Case Study of Pediatric Vaccines* (August 11, 2011), *available at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1908306.

10.      Attached as Exhibit 9 is a true and correct copy of a letter from Melanie Sloan to Richard Feinstein, dated July 6, 2010 (without exhibits).

11.      Attached as Exhibit 10 is a true and correct copy of a letter from Melanie Sloan, Robert L. Borosage, and Sharon Anglin Treat to Jon Leibowitz, Chairman of the FTC, dated March 19, 2012.

12.      Attached as Exhibit 11 is a true and correct copy of a letter from Diana Moss and Albert Foer to Chairman Jonathan Leibowitz, Commissioner J. Thomas Rosch, Commissioner Edith Ramirez, and Commissioner Julie Brill, dated November 22, 2011.

13.     Attached as Exhibit 12 is a true and correct copy of the initial complaint in *Castro v. Sanofi Pasteur*, 11-cv-07178, Dkt. No. 1.

14.     Attached as Exhibit 13 is a true and correct copy of the Discovery Order entered in *Castro v. Sanofi Pasteur, Inc.*, 11-cv-07178, Dkt. No. 102 (D.N.J. July 18, 2012).

15.     Attached as Exhibit 14 is a true and correct copy of the Discovery Confidentiality Order entered in *Castro v. Sanofi Pasteur, Inc.*, 11-cv-07178, Dkt. No. 109 (D.N.J. August 10, 2012).

16.     Attached as Exhibit 15 is a true and correct copy of CREW's Motion to Quash, 12-mc-00629 (RJL), Dkt. No. 1.

17.     Attached as Exhibit 16 is a true and correct copy of Sanofi's Opposition to CREW's Motion to Quash, 12-mc-00629 (RJL), Dkt. No. 6.

18.     Attached as Exhibit 17 is a true and correct copy of the subpoena, dated November 8, 2012, served on AAI.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 21, 2012.

Scott M. Abeles, Bar No. 485501